[No. 61741-4.   En Banc.   November 17, 1994.]

THE STATE OF WASHINGTON, *Petitioner*, v. JESUS CORDERO GARCIA, *Respondent*.

240

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Bruce Hanify, Deputy,* for petitioner.

*Gary G. McGlothlen,* for respondent.

PER CURIAM. — After a suppression motion was denied, Defendant was convicted on stipulated facts of possessing cocaine with intent to deliver and possessing heroin. In an unpublished 2-to-1 opinion written by Judge Schultheis, the Court of Appeals reversed and dismissed the charges. *State v. Garcia,* noted at 73 Wn. App. 1063 (1994).

We granted the State's Petition for Review and considered the matter without oral argument pursuant to RAP 11.6. We reverse the Court of Appeals.

The facts are undisputed. A Yakima police officer, with 2 years' experience in narcotics, and a reserve officer were on patrol in a high narcotics business area in downtown Yakima. They saw a citizen parked in a pickup with Defendant in the passenger seat. The citizen was known to the officer for two reasons. First, the officer had heard five or six fellow officers describe the citizen as a frequent visitor in that area who often pointed out to the police persons carrying or dealing drugs. Second, the citizen, a few months earlier, had identified to this particular officer a person carrying drugs which resulted in an arrest.

The citizen began gesturing to the officers while both he and Defendant were in the pickup. The officer approached the vehicle, but when the gesturing stopped, he withdrew and resumed patrol. Minutes later the citizen drove behind the marked patrol car and began honking. He told the officer that Defendant had told him he was carrying drugs and had entered the adjacent Blue Banjo Tavern.

After entering the tavern, the officers observed Defendant with a known prostitute who appeared to be offering Defendant what appeared to be a small box of some value. Defendant was making a gesture of refusal.

The uniformed officers asked Defendant if he would go outside and talk with them. Defendant consented. The officer told Defendant he believed he was carrying narcotics and asked if he could search him. Defendant consented. A cursory search produced $145, mainly in $10 and $20 bills, amounts known to be common to drug dealers and uncommon to regular patrons of that tavern.

Noticing an unusual bulge, the size of a tennis ball, in Defendant's crotch, the officer told the reserve officer that he believed that bulge might be narcotics, whereupon Defendant started to drop his pants. This was on a public street in daylight. The officer stopped Defendant from lowering his pants and put him, without handcuffs, into the back of the patrol car after first being certain there were no drugs in the back seat. They drove two blocks to the police station where the officer intended a more complete search. When they

removed Defendant from the car they discovered a tennis ball sized wad stuffed in the armrest. It contained 46 baggies of cocaine and 2 bags of heroin.

■ Defendant consented to the search so the only issue is the validity of the initial investigative restraint. Did the officer have " 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion' "? *State v. Kennedy*, 107 Wn.2d 1, 5, 726 P.2d 445 (1986) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). Considering the totality of the circumstances, the inquiry is whether there "is a substantial possibility that criminal conduct has occurred or is about to occur." *Kennedy*, at 6.

Here the question in turn depends on the necessary indicia of reliability of the "tip" from the citizen. The trial court was careful to distinguish this person from a paid or undercover informant. The general rules applicable are well articulated in *Kennedy*. Indeed, the Court of Appeals cites *Kennedy* seven times, but then reaches a conclusion contrary to the rationale of *Kennedy*. Without any analysis, the Court of Appeals majority simply concluded: "There is insufficient evidence the informant [*sic*] demonstrated credibility or his information was reliable."

■ As *Kennedy* points out, information from a "citizen" "does not require a showing of the same degree of reliability as the informant's tip" since it does not come from a "professional" informant. *Kennedy*, at 8.

Here there are factual similarities to *Kennedy*. The officer was experienced in narcotics cases and familiar with the particular location as a high drug dealing area. The intrusion was minimal and consent to search freely given. The officer recently had made an arrest based on information from the citizen. The officer knew from five to six fellow officers that the citizen frequently pointed out dealers or possessors of drugs.

■ It is quite apparent there were sufficient indicia of reliability to provide an objective measure of reasonableness.

The carefully crafted findings of the trial court fully support its denial of suppression.

The Court of Appeals is reversed; the conviction is affirmed.