[Nos. 14523-9-III; 14524-7-III.    Division Three.    August 13, 1996.]

THE STATE OF WASHINGTON, *Appellant*, v. HUBERT
ROJO ARMENTA, ET AL., *Respondents*.

*Andrew K. Miller, Prosecuting Attorney*, and *Stephanie E. Croll, Deputy*, for appellant.

*Johnnie R. Hynson* and *Robert J. Thompson*, for respondents.

MUNSON, J. — The issue here is whether these defendants were unlawfully seized, making their consent to search involuntary. We find they were not and we reverse and remand for trial.

Hubert Armenta and David Cruz approached Officer

G.J. Randles at a truck stop around noon on a Sunday. They told him their car would not start and asked if he knew of an open automobile repair shop. The officer replied that he did not know of any repair shop open on Sunday, but offered to take a look at their car himself. The men accepted his offer.

After they led him to their car, Officer Randles asked them for identification. Mr. Armenta handed over an Arizona driver's license. Mr. Cruz told Officer Randles he had lost his wallet in Idaho and did not have identification.

Noticing a bulge in Mr. Cruz's back pants pocket, the officer asked if that was his wallet. Mr. Cruz answered "no," then pulled from the pocket a large roll of money tied with rubber bands. Officer Randles asked how much money was there and Mr. Cruz replied that it was $1,000. Asked where he got the money, Mr. Cruz said he had earned it working on a ranch in Seattle. He said he had recently cashed his paycheck, but did not have the pay stub and could not remember the name of the ranch. Officer Randles asked Mr. Cruz his name and birth date. Mr. Cruz said he was Luis Perez Gonzalez.

Mr. Armenta also pulled out three rolls of money and showed them to the officer, who asked how much was there. Mr. Armenta told him each bundle contained $1,000. Asked where he had obtained the money, Mr. Armenta answered he had sold a car. He told Officer Randles he had no receipt from the sale but that he still had the title to the car.

Officer Randles called in the names and birth dates for Mr. Armenta and Mr. Cruz.[1] The dispatcher told him Mr. Armenta's driver's license had been suspended in Arizona and there was no record of the name Mr. Cruz had given. The car was listed in Mr. Armenta's name. Officer Randles called dispatch for backup, locked the $4,000 in his patrol

---

[1]It was standard operating procedure to supply this information to the police dispatcher for officer safety.

car and asked Mr. Armenta if there were weapons or drugs in his car. Mr. Armenta said "no." The officer asked something like, "Do you mind if I take a look? You do not have to let me." Mr. Armenta told him to go ahead.

Officer Randles searched the passenger compartment where he found only a pack of Zig-Zag cigarette papers. He looked up through a car window and saw Mr. Cruz holding an opened pocket knife with a blade approximately two and one-half to three-inches long. The officer approached Mr. Cruz, told him to close the knife and to hand it over along with any other weapons. Mr. Cruz complied and gave the officer two pocket knives.

Officer Randles frisked both men and did not find additional weapons. He asked Mr. Armenta if he could search in the car's trunk, adding that Mr. Armenta did not have to permit the search. Mr. Armenta said to go ahead, and unlocked the trunk himself. Hidden under the spare tire, Officer Randles found 75 baggies of cocaine, each weighing about 3.5 grams.[2] The back-up officer arrived, Mr. Armenta and Mr. Cruz were arrested, and each was told he had the right to an attorney.

The men later admitted they used the car to transport cocaine from Idaho to Seattle and earned $4,000 for the delivery. Mr. Armenta also admitted he gave Officer Randles permission to search his car. He later testified he thought he would not get his money back from Officer Randles unless he gave the police permission to search.

Consent to a search is a recognized exception to the Fourth Amendment warrant requirement. *State v. Hastings*, 119 Wn.2d 229, 830 P.2d 658 (1992). The consent may not be valid if it is obtained as the result of an unlawful seizure. *State v. Soto-Garcia*, 68 Wn. App. 20, 23-24, 841 P.2d 1271 (1992). A person is seized, for purposes of the Fourth Amendment if, under all the circumstances, the conduct of the police would cause a reasonable person

---

[2]After obtaining a search warrant later, the police also found in the car a black tar substance believed to be heroin and a marijuana cigarette.

to believe he was not free to terminate the encounter. *Soto-Garcia*, 68 Wn. App. at 23-24; *see State v. Nettles*, 70 Wn. App. 706, 855 P.2d 699 (1993), *review denied*, 123 Wn.2d 1010 (1994).

▮ Officer Randles did not seize Mr. Armenta and Mr. Cruz merely by asking for identification and, upon being shown large sums of cash, asking for some explanation. But once he had locked their money in the patrol car, they could reasonably believe they were not free to end the encounter.

When a seizure is unlawful, the results of an ensuing search are inadmissible. *State v. Kennedy*, 107 Wn.2d 1, 726 P.2d 445 (1986). But a well-founded suspicion that the detainee is engaged in criminal activity will support an investigative stop or seizure. *Terry v. Ohio*, 392 U.S. 1, 25-26, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Garcia*, 125 Wn.2d 239, 242, 883 P.2d 1369 (1994); *State v. Randall*, 73 Wn. App. 225, 228, 868 P.2d 207 (1994). In evaluating the reasonableness of a *Terry* stop, the inquiry is whether, considering the totality of the circumstances, there was a substantial possibility criminal conduct had occurred or would occur. *Garcia*, 125 Wn.2d at 242. We encourage law enforcement officers to investigate suspicious situations. *State v. Mercer*, 45 Wn. App. 769, 727 P.2d 676 (1986). A police officer need not allow suspected criminal activity to escape further scrutiny. *Mercer*, 45 Wn. App. at 775.

Two individuals, each possessing a large amount of cash, each for a different reason, may be a coincidence. When one explains he sold his car, has no receipt and still has the title, while the other explains he cashed his paycheck from a ranch in Seattle but cannot remember his employer's name, the coincidence becomes suspicious. When the individual who owns the car has a suspended driver's license, and the other individual gives a name for which no driver's license or other information is available, we think the situation is one requiring further scrutiny. The circumstances known to Officer Randles justified his secur-

ing the cash and conducting a pat-down search. Mr. Armenta and Mr. Cruz were lawfully detained.

Mr. Armenta's consent to the search of the car trunk was not the product of an unlawful seizure. The search falls within the consent exception to the warrant requirement. Exclusion of the fruits of the search was error.

We reverse and remand for trial.

SWEENEY, C.J., concurs.

SCHULTHEIS, J. (dissenting) — I respectfully dissent.

An investigative stop or seizure must be based on a well-founded suspicion that the detainee is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 25-26, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Garcia*, 125 Wn.2d 239, 242, 883 P.2d 1369 (1994). Here, what began as a simple voluntary encounter between Hubert Armenta, David Cruz and Officer G.J. Randles matured into an investigatory detention when the officer took the $4,000, locked it in his patrol car, and asked if Mr. Armenta's car contained drugs or weapons. *See State v. Soto-Garcia*, 68 Wn. App. 20, 25, 841 P.2d 1271 (1992) (defendant seized at the point he was asked if he were carrying cocaine); *State v. Aranguren*, 42 Wn. App. 452, 456, 711 P.2d 1096 (1985) ("seizure" when officer retains identification, license, ticket, or in other ways leads a reasonable person to think he or she is not free to leave).

At the time Officer Randles locked away the money, he knew only that Mr. Armenta owned the car, Mr. Armenta's driver's license had been suspended, Mr. Cruz's name might be an alias, and the men had $4,000 between them in separate rolls of $1,000. *See State v. Terrazas*, 71 Wn. App. 873, 877-78, 863 P.2d 75 (1993), *review denied*, 123 Wn.2d 1028 (1994) (the mere suspicion that a suspect has given a false name is insufficient, even when combined with an invalid driver's license, to justify a custodial arrest). Both defendants were cooperative and did not appear to present a threat. In themselves, these facts do not

support a reasonable suspicion that the defendants were involved in drug trafficking. Accordingly, the trial court was correct in concluding the seizure and continued investigation were unwarranted. *Id.* at 879.

Further, Mr. Armenta's consent to search was obtained through exploitation of the unlawful seizure. *Wong Sun v. United States,* 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *Soto-Garcia,* 68 Wn. App. at 26-27. The validity of a consent to search is determined by considering (1) the temporal proximity of the illegal detention and the subsequent consent, (2) significant intervening circumstances, (3) the purpose and flagrancy of the officer's misconduct, and (4) whether *Miranda* warnings were given. *State v. Smith,* 115 Wn.2d 775, 789, 801 P.2d 975 (1990); *Soto-Garcia,* 68 Wn. App. at 27; *State v. Tijerina,* 61 Wn. App. 626, 630, 811 P.2d 241, *review denied,* 118 Wn.2d 1007 (1991).

Here, there were no intervening circumstances between the unlawful seizure and the request to search, and little time elapsed. Although Mr. Armenta was informed he did not have to consent, he was not given full *Miranda* warnings and reasonably believed he would not regain his money without giving consent. Also, the police misconduct was relatively intrusive, considering Officer Randles's lack of reasonable suspicion the men were engaged in criminal activity. Under these circumstances, Mr. Armenta's consent to search was tainted by the unlawful seizure and the court properly suppressed all evidence obtained as a result of that search. *Soto-Garcia,* 68 Wn. App. at 29. I would, therefore, affirm.

Reconsideration denied September 20, 1996.

Review granted at 131 Wn.2d 1005 (1997).