[No. 23751-6-III.  Division Three.  September 28, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. JEREMIAH IGNACIO MARTINEZ, *Appellant*.

---

[62] The prevailing party in a CPA action may, in the discretion of the court, be awarded attorney fees and costs. RCW 19.86.080.

*Richard F. Johnson*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Terry J. Bloor, Deputy*, for respondent.

¶1 SWEENEY, C.J. — Article I, section 7 of our state constitution requires that an investigatory stop be based on articulable particularized facts that support a substantial possibility that a person is engaged in criminal activity. *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). Here, an officer was patrolling on foot in an apartment complex located in a high crime area. Vehicle prowling had been reported there in the past. The officer saw Jeremiah Martinez near several parked cars. Mr. Martinez walked quickly away. The officer asked him whether he lived there. Mr. Martinez said he did not. So the officer detained and frisked him while he checked his identification. This seizure was not based on a particularized suspicion of criminal activity by Mr. Martinez.

## FACTS

¶2 The suppression court's findings reflect the stipulated facts in the police report.

¶3 Richland Police Officer B. Henry was patrolling on foot the grounds of the Columbia Park Apartments. The apartments are in a high crime neighborhood, and several vehicle prowls had been reported there. The parking lot was unlit. Officer Henry was working alone.

¶4 At 12:46 AM, Officer Henry spotted Jeremiah Martinez walking in the shadows from an area where several cars were parked in front of one of the apartment buildings. Mr. Martinez was walking briskly and looked around nervously. Officer Henry followed him.

¶5 Officer Henry called out from about 25 yards away, identified himself as a police officer, and asked Mr. Martinez

whether he lived in the apartments. Mr. Martinez responded that he did not. Officer Henry ordered him to sit down on a utility box while he radioed dispatch to identify him.

¶6 Officer Henry patted Mr. Martinez down for weapons. He felt a hard, rectangular object he thought was large enough to conceal a weapon. He removed the container. It held methamphetamine. Officer Henry read Mr. Martinez his *Miranda*[1] rights and then arrested Mr. Martinez for possession. He searched him incident to the arrest. He found methamphetamine and a glass methamphetamine pipe in Mr. Martinez's pocket.

¶7 The State charged Mr. Martinez with possession of methamphetamine.

¶8 Mr. Martinez moved to suppress the evidence. He argued that the facts did not support a reasonable suspicion that he was engaged in criminal activity and that the officer had acted on a constitutionally impermissible hunch. The State responded that the stop and search were reasonable because, under the totality of the circumstances, it was reasonable to suspect that Mr. Martinez was prowling cars. The court concluded that the totality of the circumstances justified the stop and frisk and denied the motion to suppress. A stipulated facts trial followed. And the court convicted Mr. Martinez of possession of methamphetamine.

## DISCUSSION

### LAWFUL STOP

¶9 Mr. Martinez argues that the officer here did not have the "particularized suspicion" necessary to stop him. He was stopped simply for walking in a public place after dark.

¶10 The State responds that the totality of the circumstances justified a brief investigative stop. It was late at night. The neighborhood was rated "high crime." Vehicle prowls had been reported. The parking area was dark. Mr.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Martinez was on private property. He looked nervous and walked quickly away from the officer. Taken together with the officer's experience, these facts established a substantial possibility that Mr. Martinez was prowling vehicles.

¶11 "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST. art. I, § 7. The privacy protection provided by article I, section 7 is greater than that of the fourth amendment to the United States Constitution. *State v. O'Neill*, 148 Wn.2d 564, 584, 62 P.3d 489 (2003). Under article I, section 7, warrantless searches and seizures are presumed unreasonable unless one of the narrow, "jealously and carefully drawn" exceptions applies. *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996).

¶12 Mr. Martinez challenges the trial court's conclusion that the stop and search were reasonable and thus constitutional. We review the court's findings of fact for substantial evidence. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). We review the court's conclusions of law de novo. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999). Whether a warrantless stop is constitutional is a question of law that we review de novo. *State v. Rankin*, 151 Wn.2d 689, 694, 92 P.3d 202 (2004).

¶13 A stop and frisk is a seizure subject to the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Officer Henry "seized" Mr. Martinez when he ordered him to sit on the utility box and wait. *See State v. Ellwood*, 52 Wn. App. 70, 74, 757 P.2d 547 (1988). The issue is whether the officer acted under "authority of law" and specifically whether this investigatory stop satisfied some exception to the warrant generally required by article I, section 7.

¶14 Article I, section 7 permits police to conduct brief investigatory stops of limited scope and duration. *Kennedy*, 107 Wn.2d at 5-6; *Mendez*, 137 Wn.2d at 223. To justify such a stop, the officer must be able to " 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant

that intrusion.' " *Mendez*, 137 Wn.2d at 223 (quoting *Terry*, 392 U.S. at 21). The facts must give rise to " 'a substantial possibility that criminal conduct has occurred or is about to occur.' " *Id.* (quoting *Kennedy*, 107 Wn.2d at 6).

¶15 When passing on the propriety of this warrantless stop and search, we evaluate the totality of the circumstances known to the officer at the time. *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). Presence in a high crime area at night is not enough. The circumstances must suggest a substantial possibility that the particular person has committed a specific crime or is about to do so. *State v. Garcia*, 125 Wn.2d 239, 242, 883 P.2d 1369 (1994).

¶16 Innocuous facts do not justify a stop. *State v. Armenta*, 134 Wn.2d 1, 948 P.2d 1280 (1997). The officer may, however, rely on experience in evaluating arguably innocuous facts. *State v. Samsel*, 39 Wn. App. 564, 570-71, 694 P.2d 670 (1985). The question here is whether arguably innocuous facts plus the officer's experience amount to an articulable suspicion or merely an inchoate hunch.

¶17 In *State v. Laskowski*, police responded to a report of a possible vehicle prowl. *State v. Laskowski*, 88 Wn. App. 858, 950 P.2d 950 (1997). They stopped the defendant and his companions, who matched the dispatcher's description of the suspects. *Id.* at 859. The court upheld the stop and subsequent search, concluding that "Laskowski was part of a group reported to be acting suspiciously, and the officer could reasonably consider all facts known or observed about any member of the group." *Id.* at 860. But in *Laskowski*, the officer was investigating a reported prowl in progress.

¶18 Here, vehicle prowls had been reported in the past at the Columbia Park Apartments but not on the night Officer Henry saw Mr. Martinez walking through the lot.

¶19 Again, in *State v. Ozuna*, an actual vehicle prowl had been reported. *State v. Ozuna*, 80 Wn. App. 684, 911 P.2d 395 (1996). But the officers had no information, such as a description, tying the defendants to the crime. The prowl

suspects had been reported running away from the location of the defendants' car. *Id.* at 689. On appeal, the court concluded that this stop and search was not constitutionally justifiable. *Id.*

¶20 *O'Neill* is not a vehicle prowl case, but the facts are helpful here. The *O'Neill* court held that it was reasonable and, therefore, lawful for an officer to approach a car parked in the lot of a business at 1:15 AM, an hour after the business closed. *O'Neill*, 148 Wn.2d at 577 n.1. The business had been burglarized twice in the previous month. And the car's windows were fogged. This suggested that the car was occupied and had been there a while. *Id.* The occupant of the car was not "seized," the court held, until the officer ordered him out of the car. And at that point the circumstances supported a *Terry* stop. *Id.*

¶21 Here, Officer Henry was patrolling this parking lot because of past problems, not in response to a crime in progress report. He had no description or other information linking Mr. Martinez to any prowling that evening or, for that matter, at any time. The State argues that Mr. Martinez's reaction to the officer's presence aroused suspicion and the officer observed nothing to suggest any legitimate reason for Mr. Martinez's presence in the shadows late at night. But that is not the test.

¶22 A stop and frisk is a seizure subject to the Fourth Amendment. *Terry*, 392 U.S. at 16. Accordingly, the officer must have articulable grounds for a stop at its inception. *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999). Mr. Martinez was not required to articulate a reason not to stop him. The police may not stop and question citizens on the street simply because they are unknown to the police or look suspicious, or because their " 'purpose for being abroad is not readily evident.' " *Terry*, 392 U.S. at 14 n.11 (quoting PRESIDENT'S COMM'N ON LAW ENFORCEMENT AND ADMIN. OF JUSTICE, TASK FORCE REPORT: THE POLICE 184 (1967)).

¶23 The problem here is not with the officer's suspicion; the problem is with the absence of a *particular-*

*ized* suspicion. *State v. Duncan*, 146 Wn.2d 166, 179, 43 P.3d 513 (2002); *Kennedy*, 107 Wn.2d at 6. That is, there must be some suspicion of a particular crime or a particular person, and some connection between the two. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1647 (1993) (particularized: "directed toward a specific object rather than some or all objects"). General suspicions that Mr. Martinez may have been up to no good are not enough to warrant the stop here.

¶24 We reverse the conviction and dismiss the case.

BROWN and KATO, JJ., concur.