[No. 25858-1-III.   Division Three.   February 12, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. TROY JUDE BRAY, *Appellant*.

*Eric J. Nielsen* (of *Nielsen, Broman & Koch, PLLC*), for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Anita I. Petra, Deputy*, for respondent.

¶1 SWEENEY, C.J. — We have previously concluded that a *Terry*[1] stop requires something more than a generalized suspicion. *State v. Martinez*, 135 Wn. App. 174, 182, 143 P.3d 855 (2006). The suspicion must be particularized to the crime or to the person. Here, police knew of the defendant from previous contacts in the area of some storage units. Police spotted him inside the enclosed storage units at 2:30 in the morning driving around slowly with his car's lights off. They knew of recent burglaries within 1,000 feet of the storage units. It was nighttime. They saw the defendant look at the doors of some of the storage units in the compound. He appeared to be prowling. These circumstances easily provided the necessary particularized suspicion to support the investigative stop here. We agree, then, that the court properly denied the defendant's motion to suppress evidence seized following the defendant's arrest. And we affirm his convictions for second degree burglary and third degree possession of stolen property.

## FACTS

¶2 On September 12, 2006, Richland Police Officer Brice Henry patrolled an area behind City View Storage because of a number of recent burglaries in the vicinity. He saw a minivan driving slowly, without lights, inside City View's fenced storage compound at 2:30 in the morning. Officer Henry recognized the van and its driver, Troy Jude Bray, from two encounters with Mr. Bray a few weeks earlier in the vicinity of the storage units.

¶3 Officer Henry had talked to Mr. Bray on those two separate occasions. The first time Mr. Bray said he was sleeping in his van near the storage compound because his van was out of gasoline. Mr. Bray gave no explanation for his presence in the area when Officer Henry talked to him the second time earlier in August.

¶4 Officer Henry suspected that Mr. Bray was involved in a burglary, and he called for backup. Richland Police

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Officer Kevin Barton arrived and went to a different part of the storage compound. He saw Mr. Bray's unoccupied van parked in the center of the compound, with its lights off. He saw Mr. Bray walking inside the compound looking at the doors of various storage units. Officer Barton concluded that Mr. Bray was prowling and reported that to Officer Henry.

¶5 Officer Barton had the first contact with Mr. Bray on the night of September 12. Officer Barton called to Mr. Bray from *outside* the fence and ordered Mr. Bray to the ground. Officer Henry was seconds from Mr. Bray. He arrived immediately and asked Mr. Bray whether he had any weapons. Mr. Bray responded that he had a pocket knife and some tools.

¶6 Officer Henry could see that Mr. Bray had wire cutters protruding from a back pocket, a flashlight in another pocket, twine around his wrist, wire in his hands, and a miner's lamp around his neck. And Mr. Bray wore gloves and camouflage clothing. Officer Henry knew that wire cutters had been used to cut a chain link fence in an earlier burglary near the storage facility.

¶7 The officers handcuffed Mr. Bray, checked him for other weapons, and called for other officers to search the area. Additional officers arrived and found an open and empty storage unit with a cut lock across from Mr. Bray's parked van. The unit had been broken into. Officer Henry questioned Mr. Bray about his presence in the storage area. Mr. Bray said he was delinquent on a payment for a storage unit he rented in the compound and the business owners had changed his lock. Officer Henry did not believe Mr. Bray's explanation because Mr. Bray had never mentioned that he rented a storage unit in the compound during the other contacts. Officer Henry checked Mr. Bray's criminal history and found that he had been arrested for possession of burglary tools. Thirty to thirty-five minutes elapsed from the time police stopped Mr. Bray to his arrest.

¶8 The police then searched Mr. Bray's van incident to arrest. They found shoes, copper tubing, and aluminum

wire. Officers later matched a pair of shoes to footprints found at one of the prior burglary locations. Mr. Bray admitted he stole the copper tubing, gasoline, and aluminum wire from area businesses. The State charged him with second degree burglary and third degree possession of stolen property.

¶9 Mr. Bray moved to suppress the physical evidence found in his van and the statements made to police. He argued the police lacked adequate justification to stop or arrest him. The court concluded that the officer had both reasonable suspicion to stop him and probable cause to arrest him and denied his motion to suppress the physical evidence and the statements to police. The court concluded that Mr. Bray was guilty as charged after a bench trial.

## DISCUSSION

REASONABLE SUSPICION TO DETAIN

■ ¶10 The threshold and essential question here is whether the police had sufficient grounds to stop and seize Mr. Bray in the first place. He relies on our recent holding in *Martinez*[2] for the proposition that mere presence in a high crime area is not sufficient to support the reasonable suspicion required to justify a *Terry* stop. His reliance is misplaced. Mr. Bray also assigns error to the court's refusal to suppress his statements to police. But he does not assign error to the court's conclusion that the statements are admissible, nor does he argue this assignment of error in his brief. We, therefore, do not address it.

■■ ¶11 Mr. Bray does not challenge any of the court's findings of fact as unsupported by the evidence, and those findings are therefore verities here on appeal. *State v. Ross*, 106 Wn. App. 876, 880, 26 P.3d 298 (2001). Whether the warrantless *Terry* stop here passes constitutional muster is a question of law, and our review is then de novo. *State v. Rankin*, 151 Wn.2d 689, 694, 92 P.3d 202 (2004); *Martinez*, 135 Wn. App. at 179.

---

[2] 135 Wn. App. 174.

¶12 Police may stop a citizen to investigate with less than probable cause to believe a crime has been committed. *State v. Glover*, 116 Wn.2d 509, 513, 806 P.2d 760 (1991). But the stop is permissible only if the officer "has a reasonable suspicion, grounded in specific and articulable facts, that the person stopped has been or is about to be involved in a crime." *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003). We look at the totality of the circumstances known to the officer to decide whether the stop meets these criteria. *Glover*, 116 Wn.2d at 514. The level of articulable suspicion necessary to support an investigatory detention is "a substantial possibility that criminal conduct has occurred or is about to occur." *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). The reasonableness of a stop is a matter of probability, not a matter of certainty. *State v. Mercer*, 45 Wn. App. 769, 774, 727 P.2d 676 (1986). Again, the police may stop a suspect and ask for identification and an explanation of his or her activities if they have a well-founded suspicion of criminal activity. *State v. White*, 97 Wn.2d 92, 105, 640 P.2d 1061 (1982).

¶13 In *Martinez*, police saw the defendant walking at night in an apartment building parking lot open to the public. *Martinez*, 135 Wn. App. at 177. Vehicle prowling had been reported in the past, but not on the night Mr. Martinez was stopped. *Id.* A police officer stopped Mr. Martinez and searched him for weapons. The officer found methamphetamine. *Id.* at 178. We concluded the stop was not justified. The officer had no particularized suspicion of any criminal activity and no particularized suspicion that Mr. Martinez was involved in any criminal activity. *Id.* at 181-82. We reversed the order denying Mr. Martinez's motion to suppress. *Id.* at 182.

¶14 But *Martinez* is easily distinguishable from this case. Officer Henry knew Mr. Bray from previous contacts in the area of these storage units. Officer Henry knew of recent burglaries within 1,000 feet of the storage facility. Police saw Mr. Bray drive his van slowly through the enclosed storage facility. His car lights were off even though

it was nighttime. Officer Barton saw Mr. Bray looking at the doors of various storage units in the compound. Mr. Bray wore gloves and camouflage clothing. He appeared to be prowling. These facts easily support the reasonable suspicion of criminal activity necessary to justify a *Terry* stop.

LENGTH OF THE DETENTION—REASONABLE; PROBABLE CAUSE

¶15 Mr. Bray next argues that police detained him longer than necessary to dispel any suspicion, even assuming a proper *Terry* stop. The trial court made no findings or conclusions that address this assignment of error. But that is understandable given that Mr. Bray first assigns error to the scope of the detention here on appeal. Specifically, Mr. Bray argues that the *Terry* stop, even if initially justified, exceeded its permissible scope when he "was detained for reasons not related to the investigation of an alleged crime scene and for longer than was necessary for officers to dispel their suspicion that he was engaged in criminal conduct." Br. of Appellant at 13.

¶16 The scope of a permissible *Terry* stop will vary with the facts of each case. An investigative detention must last no longer than is necessary to satisfy the purpose of the stop. *State v. Williams*, 102 Wn.2d 733, 738, 689 P.2d 1065 (1984). We ask whether "it [was] reasonably related *in scope* to the circumstances which justified the interference in the first place." *Id.* at 739. The scope and duration of the stop may be extended if the investigation confirms the officer's suspicions. *Acrey*, 148 Wn.2d at 747.

¶17 Mr. Bray argues that officers exceeded the scope of the *Terry* stop by handcuffing him and investigating the scene for 30 minutes before arresting him. But Mr. Bray's explanation of what he was doing did nothing to dispel the officers' suspicions that he was involved in a burglary. Their continued investigation to check Mr. Bray's criminal history and determine whether other storage units had been broken into was therefore justified. *Id.*

¶18 The court properly refused to suppress Mr. Bray's statements to police or the goods found in his van. We affirm the convictions.

SCHULTHEIS and BROWN, JJ., concur.