182 P.3d 1011 (2008)
STATE of Washington, Respondent,
v.
Benjamin Howard ROWELL, Appellant.
No. 25366-0-III.
Court of Appeals of Washington, Division 3.
May 6, 2008.
David Wayne Corkrum, Attorney at Law, Pasco, WA, for Respondent.
Susan Marie Gasch, Gasch Law Office, Spokane, WA, for Appellant.
BROWN, J.
¶ 1 Benjamin Howard Rowell appeals his stipulated-facts bench trial conviction for possessing a controlled substance. He contends *1013 the trial court erred in denying his evidence suppression motion and that the evidence is insufficient to support his conviction. We hold the trial court correctly determined Mr. Rowell's initial police encounter was a lawful investigative stop. Further, Mr. Rowell's identification led to his warrant-based arrest and the discovery of methamphetamine on his person during his jail booking. Accordingly, we affirm.

FACTS
¶ 2 At 1:41 a.m. on March 17, 2005, Pasco Police Officer Justin Greenhalgh responded to a shots-fired call in a narrowly described Pasco residential neighborhood. While the officer was enroute, dispatch told him of a second shots-fired call in the same area. Officer Greenhalgh arrived at the area about five minutes after the first call. Within two or three minutes, he spotted Mr. Rowell about a block away and pursued him. The officer testified Mr. Rowell appeared to be fleeing from the reported location on a speeding, unlit bicycle. The officer described Mr. Rowell when stopped as "scared or trying to get the heck out of the area for some reason." Report of Proceedings (June 14, 2005) (RP) at 18. Mr. Rowell then appeared "very nervous," "very uneasy," "fidgety," and "very on the edge." RP at 20. Officer Greenhalgh needed to "calm" Mr. Rowell in order to complete his investigation. Id.
¶ 3 Officer Greenhalgh related his difficulty in dispelling his suspicions and his concern: "I'm just trying to investigate. [Mr. Rowell] kept asking, `Why are you stopping me? Why are you stopping me?' And I kept telling him, `I'm just stopping you to try to find out about this. I need to I.D. you because you're in the area so I can let my dispatcher know in case anything develops later on.'" RP at 21. Officer Greenhalgh next took and reported Mr. Rowell's name to dispatch before requesting and receiving his permission for a pat-down search. The officer explained, "due to the safety, I was like, `Can I just pat you down because you're making me nervous?'" Id. Just after the search, Officer Greenhalgh arrested Mr. Rowell on warrants reported by dispatch.
¶ 4 During routine jail booking procedures, methamphetamine was found in Mr. Rowell's sock. The State charged Mr. Rowell with possession of a controlled substance, methamphetamine. Mr. Rowell unsuccessfully moved to suppress the evidence. After a stipulated-facts bench trial conviction, he appealed.

ANALYSIS

A. Investigatory Stop
¶ 5 The issue is whether the trial court erred in deciding Officer Greenhalgh made a lawful investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
¶ 6 We review a trial court's findings of fact following a suppression hearing for substantial evidence. State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994); State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999). We review the constitutionality of a warrantless stop de novo. State v. Rankin, 151 Wash.2d 689, 694, 92 P.3d 202 (2004).
¶ 7 Under the Fourth Amendment to the U.S. Constitution and article I, section 7 of the Washington Constitution, a police officer may conduct an investigatory stop based on less than probable cause if the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Mendez, 137 Wash.2d at 223, 970 P.2d 722 (quoting Terry, 392 U.S. at 21, 88 S.Ct. 1868). The level of articulable suspicion necessary to support an investigatory detention is "a substantial possibility that criminal conduct has occurred or is about to occur." State v. Kennedy, 107 Wash.2d 1, 6, 726 P.2d 445 (1986).
¶ 8 When evaluating the reasonableness of an investigatory detention, a court considers the totality of the circumstances known to the officer at the inception of the stop, including the officer's training and experience. State v. Glover, 116 Wash.2d 509, 514, 806 P.2d 760 (1991). If an officer has a well-founded suspicion of criminal activity, he or she may stop a suspect, *1014 and ask that person for identification and an explanation of his or her activities. State v. White, 97 Wash.2d 92, 105, 640 P.2d 1061 (1982). The circumstances must be more consistent with criminal conduct than with innocent behavior. State v. Pressley, 64 Wash.App. 591, 596, 825 P.2d 749 (1992).
¶ 9 Here, substantial evidence shows two different callers reported in quick succession that shots were fired in the same locale. Officer Greenhalgh responded to the first call and received word of the second call while enroute. About five minutes after the first call, the officer arrived to investigate. Within two or three minutes, he spotted Mr. Rowell within about a block of the reported location appearing to flee on a speeding, unlit bicycle. On contact, Mr. Rowell displayed well-described distinctive behaviors to Officer Greenhalgh that reasonably raised his suspicions and required the officer's attempt to calm him. The officer had difficulty dispelling his suspicions to the extent that he became nervous for his safety and reported Mr. Rowell's name to dispatch before the pat-down search. Mr. Rowell's arrest came, "right after I had searched and found the knives, they told me that he had warrants." RP at 21.
¶ 10 The court orally found Mr. Rowell was peddling away from the reported shots-fired area in a "very fast manner . . . like he was scared or had to get out of the area." RP at 56-57. The court stressed the seriousness of a shots-fired call, then found Officer Greenhalgh's stop reasonable under the circumstances: "He saw the defendant acting very nervously. He was very nervous. He was uneasy. He was fidgety. He was looking around, and I think that's a basis for going further beyond anything about the shots fired. So I'm going to  I'm going to hold that the stop was appropriate." RP at 57.
¶ 11 Written finding of fact two detailed that Officer Greenhalgh detected Mr. Rowell "two or three minutes after beginning his search" about "one block away" while "peddling hard" in a way "consistent with attempting to flee the area." Clerk's Papers (CP) at 45. This required the officer to "accelerate and race his motor in order to catch up with the bike." Id. "The officer observed no other vehicle or pedestrian traffic in the area." Id. Finding three detailed Mr. Rowell's "nervous and fidgety" behavior. Id. Finding three detailed the warrant arrest circumstances and later methamphetamine discovery. The officer's testimony is substantial supporting evidence of well-founded, criminally suspicious circumstances. The trial court concluded:
The officer was responding to a report of shots fired in a residential neighborhood in the early morning hours, which justified more proactive action than may have been appropriate in a less serious matter. The defendant was the only person . . . in the early morning hours and was rapidly riding a bicycle as though fleeing the area of the shooting. It was appropriate for the officer to briefly detain the defendant to enable the officer to confirm or dispel his suspicions.
CP at 45.
¶ 12 A law officer may ask a person for identification when the officer has a reasonable suspicion that the person is involved in criminal activity. White, 97 Wash.2d at 105-06, 640 P.2d 1061. Mr. Rowell was spotted apparently fleeing from the shots-fired location within minutes of the calls, at an early-morning hour when no others were present. Mr. Rowell's apparent flight was reasonably suspicious to both the officer and the trial court. Indeed, it is generally accepted as evidence of guilty activity. State v. Price, 126 Wash.App. 617, 645, 109 P.3d 27 (2005). Mr. Rowell's nervous and fidgety behavior prompted Officer Greenhalgh to attempt to "calm" him. RP at 20. These specific, articulated, suspicious facts do not suggest a pretext issue.
¶ 13 Further, warrant checks during an investigatory stop are accepted, routine police procedures. State v. Madrigal, 65 Wash.App. 279, 283, 827 P.2d 1105 (1992). The purpose of this stop was serious, to investigate shots-fired calls. No evidence of excessive physical intrusion on Mr. Rowell's liberty exists. No unreasonable delay was involved in securing the warrant check. And, "an officer may call in his or her location and activity to enhance the officer's personal *1015 safety" under these circumstances. State v. Villarreal, 97 Wash.App. 636, 645, 984 P.2d 1064 (1999).
¶ 14 Considering the totality of the circumstances, we conclude Officer Greenhalgh possessed the sufficient particularized suspicion necessary to support Mr. Rowell's stop and identification. Thus, we hold the trial court did not err in deciding the officer made a lawful Terry investigative stop and denying Mr. Rowell's evidence suppression motion.

B. Evidence Sufficiency
¶ 15 Mr. Rowell broadly contends the evidence is insufficient to support his conviction without detailing any specific deficiency. We review evidence insufficiency challenges in a light most favorable to the State and decide whether any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980). The record shows methamphetamine was found on Mr. Rowell's person during his jail-booking search. This evidence sufficiently supports Mr. Rowell's conviction for possessing a controlled substance.
¶ 16 Affirmed.
I CONCUR: SWEENEY, J.
SCHULTHEIS, C.J. (dissenting).
¶ 17 I disagree with the majority's conclusion that the investigative stop of Benjamin Howard Rowell was supported by particularized suspicion of criminal activity and respectfully dissent. We have held that to justify an investigatory stop, an officer must have a particularized suspicion that someone has committed or is about to commit a specific crime. State v. Martinez, 135 Wash.App. 174, 143 P.3d 855 (2006). The facts which the majority cites to justify the stop are the reports of shots-fired at an early morning hour, Mr. Rowell's sole presence in the vicinity of the reports, and a police officer's characterization of Mr. Rowell's rapid bicycle riding as an attempt to flee the area. However, these facts do not support the degree of particularized suspicion required under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution.
¶ 18 The level of articulable suspicion necessary to support an investigatory detention is "a substantial possibility that criminal conduct has occurred or is about to occur." State v. Kennedy, 107 Wash.2d 1, 6, 726 P.2d 445 (1986). Our recent case of Martinez, 135 Wash.App. 174, 143 P.3d 855, is instructive here. In that case, we reiterated the rule that a Terry[1] stop is justified only when the officer has "some suspicion of a particular crime or a particular person, and some connection between the two." Martinez, 135 Wash.App. at 182, 143 P.3d 855. "The police may not stop and question citizens on the street simply because they are unknown to the police or look suspicious." Id. at 181, 143 P.3d 855.
¶ 19 Here, the crux of the stop was that Mr. Rowell appeared suspicious to the police. Officer Justin Greenhalgh wrote in his incident report: "The cyclist was moving very fast like he was trying to get out of the area quickly." Ex. 1. Citing State v. Price, 126 Wash.App. 617, 109 P.3d 27 (2005), the majority notes that Mr. Rowell's apparent flight was "reasonably suspicious" because flight is generally accepted as evidence of guilt. Majority at 941. However, the majority improperly extends this rule to support a Terry stop. While the "flight of a person, following the commission of a crime," may be considered by a jury in determining guilt or innocence, it is not a proper consideration here. State v. Bruton, 66 Wash.2d 111, 112, 401 P.2d 340 (1965) (emphasis added). Where was the crime? What was Mr. Rowell fleeing? Mr. Rowell was simply riding a bicycle quickly in the dark in the vicinity of reported gunshots. The officer thought Mr. Rowell's behavior appeared suspicious; but his characterization of Mr. Rowell's behavior as suspicious does not make it so. And it does not support a Terry stop.
¶ 20 Furthermore, conspicuously absent from the information before the officer was any physical description of a suspect or modes of transportation. In the absence of this kind of detail, all that remains is the *1016 officer's hunch that Mr. Rowell was involved in criminal activity. This hunch is irrelevant and constitutionally inadequate. Generalized suspicions do not justify Terry stops. Nor do innocuous facts. Martinez, 135 Wash.App. at 180, 143 P.3d 855.
¶ 21 Without a reasonable articulable suspicion that Mr. Rowell was specifically linked to the reported gunshots, the investigatory stop was unreasonable. Consequently, the evidence discovered after the seizure should have been suppressed. Kennedy, 107 Wash.2d at 4, 726 P.2d 445. With no evidence to support the charge, I would reverse and dismiss the conviction.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).