# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, ) | No. 72167-4-I |
| Respondent, ) | |
| ) | DIVISION ONE |
| v. ) | |
| ) | UNPUBLISHED OPINION |
| JORDAN LEE WILSON, ) | |
| ) | |
| Appellant. ) | FILED: September 28, 2015 |

2015 SEP 28 AM 10: 55
COURT OF APPEALS DIV I
STATE OF WASHINGTON

TRICKEY, J. — Jordan Wilson appeals his conviction of possession of a controlled substance, contending the trial court erred in denying his motion to suppress based on an unconstitutional investigatory detention. He also argues that police exceeded the proper scope of the stop by running his name through the police department computer to determine his warrant status. But the trial court's findings of fact support the conclusion that the detective's reasonable, articulable suspicion justified the stop, and Wilson fails to demonstrate the officers exceeded the proper scope of the stop. We affirm.

## FACTS

The State charged Jordan Wilson with possession of heroin and methamphetamine. Wilson filed a CrR 3.6 motion to suppress evidence, claiming that Detective James Massingale of the City of Everett Police Department violated his constitutional rights by detaining him for investigation without reasonable particularized suspicion of criminal activity.

At the CrR 3.6 hearing, Detective Massingale testified about his investigation of the theft of jewelry, firearms, sterling silverware, and other

property in a burglary that occurred in Everett on the morning of March 20, 2014. That afternoon, police officers located a vehicle used in the burglary in the parking lot of an Extended Stay America. Massingale went to the hotel to investigate the vehicle and "numerous people associated with" it.[1] Massingale found the vehicle in the parking lot on the west side of the hotel. Police discovered bags of property, as well as three boxes consistent with the storage of sterling silverware, in the vehicle. Massingale noted that the vehicle was located near a door providing a more direct route to rooms involved in his investigation than that of the main entrance to the hotel.

Based on the burglary report, Detective Massingale believed that at least four people were involved. At the hotel, Massingale also discovered that the resident of Room 123 had a high level of "pawn activity."[2] Although the man in Room 123 "was not apprehended" that night, police arrested one suspect associated with the vehicle used in the burglary on the evening of March 20 at the hotel.[3] Police also recovered property from the suspect's hotel room. Massingale determined that the recovered property included items stolen in the March 20 burglary, in another Everett burglary that occurred on the morning of March 19, and in three other burglaries in Snohomish County. Massingale believed that the burglars had been using the vehicle to transport stolen property from one hotel to another. Based on his review of the burglary reports, Massingale determined that stolen property, including firearms, was still missing.

---

[1] Verbatim Report of Proceedings (VRP) (May 29, 2014) at 6.
[2] VRP (May 29, 2014) at 6.
[3] VRP (May 29, 2014) at 6, 13, 15.

During the course of his investigation, Massingale learned that the man in Room 123 continued to pawn items, such as jewelry, consistent with the missing property.

On March 31, after receiving a call from a hotel manager, Detective Massingale went to the Extended Stay America to look for a blue Buick associated with Room 123. While driving through the parking lot on the west side of the hotel, Massingale saw three men engaged in "light-hearted" conversation around a green Chevrolet Monte Carlo with both doors and the trunk open, and "overflowing with property" in "bags, backpacks, shoulder-carry bags, gym bags," in a manner "consistent with similar crimes" he had investigated.[4] Massingale continued driving around the hotel but he did not find the Buick. On his second pass around the hotel, he stopped his unmarked vehicle "within about two car lengths" of the Monte Carlo, approached the men "at a fast walk," identified himself "as the police," and told them he had recovered stolen property repeatedly at the hotel.[5] As he came near the car, Massingale could see car parts, power tools, "an air-soft gun or a paint-ball gun," as well as compact discs (CDs) or digital video discs (DVDs), "five or six cellphones," and "clothing all throughout the car."[6] Based on the fact that three of the burglary suspects had not yet been arrested, that the man in Room 123 was "still actively pawning," and that the car was overflowing with property "consistent with the

[4] VRP (May 29, 2014) at 9, 10, 26.
[5] VRP (May 29, 2014) at 10-11.
[6] VRP (May 29, 2014) at 26.

3

other investigation," Massingale testified that he "reasoned" that the men could be bringing "stolen property" "to Room 123 to be pawned."[7]

As he approached, the men stopped talking and focused on Massingale. Because he knew that stolen firearms were still missing, his view of the two men on the passenger side of the car was "obscured a little bit," and one man's hand dropped out of view to his waistband, Massingale drew his gun and held it down by his side while ordering the men to put their hands on the car.[8] Massingale informed them that "a second officer was en route" and asked them about their connection to the car and to the hotel.

When Officer Loucks arrived, he and Detective Massingale requested identification from the three men. Loucks requested a computer check on all three and discovered an outstanding felony warrant for Jordan Wilson. They arrested Wilson and found heroin and methamphetamine during a search incident to the arrest.

Based on this testimony, Wilson argued that his detention was unlawful because Massingale did not articulate any reasonable basis to suspect that he was particularly involved in criminal activity given his mere presence in a place where crimes had occurred in the past and near a car full of innocuous items. The trial court denied the motion to suppress and filed written findings of fact and conclusions of law. After a bench trial on stipulated evidence, the court found Wilson guilty of possession of controlled substances.

Wilson appeals.

---

[7] VRP (May 29, 2014) at 13, 16.
[8] VRP (May 29, 2014) at 11-12.

4

ANALYSIS

We review a trial court's order following a motion to suppress evidence to determine if substantial evidence supports the trial court's factual findings. State v. Hill, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Unchallenged findings of fact are verities on appeal. State v. Bonds, 174 Wn. App. 553, 562, 299 P.3d 663, review denied, 178 Wn.2d 1011, 311 P.3d 26 (2013). Credibility determinations are the prerogative of the trial court and are not subject to review. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We review the trial court's legal conclusions de novo. State v. Carneh, 153 Wn.2d 274, 281, 103 P.3d 743 (2004).

"[A] stop, although less intrusive than an arrest, is nevertheless a seizure and therefore must be reasonable under the Fourth Amendment and article 1, section 7 of the Washington Constitution." State v. Kennedy, 107 Wn.2d 1, 4, 726 P.2d 445 (1986). An investigatory Terry[9] stop is permissible if the investigating officer has "a reasonable and articulable suspicion that the individual is involved in criminal activity." State v. Walker, 66 Wn. App. 622, 626, 834 P.2d 41 (1992). A reasonable suspicion is the "substantial possibility that criminal conduct has occurred or is about to occur." Kennedy, 107 Wn.2d at 6. "When the activity is consistent with criminal activity, although also consistent with noncriminal activity, it may justify a brief detention." Kennedy, 107 Wn.2d at 6. We review the reasonableness of the police action in light of the particular

---

[9] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

circumstances of each case. State v. Lesnick, 84 Wn.2d 940, 944, 530 P.2d 243 (1975).

Wilson assigns error to the following findings of fact:

2. Detective Massingale had been at that location previously on March 20, 2014, at which time he found a vehicle associated with rooms at the hotel where criminal activity was taking place.
. . . .

5. Detective Massingale observed property in the vehicle which was of a character associated with transporting stolen property, such as bags, gym bags, and backpacks.[10]

Wilson argues that finding of fact 2 is not supported by substantial evidence because the March 20 investigation revealed criminal activity in only one room, rather than rooms, at the hotel. But he fails to explain how the difference in the number of rooms is material to the court's ruling on the reasonableness of Massingale's suspicions.

As to finding of fact 5, Wilson argues that the finding is illogical and that "Massingale testified that the property in the car appeared consistent with crimes he was investigating, not that backpacks, bags, and gym bags are characteristically used to transport stolen property."[11] But Wilson's claim of error appears to be a distinction without a difference. And to the extent the language of the finding is less than artful, we may look to the court's oral ruling to interpret the finding, as long as no inconsistency exists. State v. Bynum, 76 Wn. App. 262, 266, 884 P.2d 10 (1994). In its oral ruling, the court stated:

[Detective Massingale] observed, as he approached, property in the vehicle that was of a character and in bags, gym bags, backpacks,

---

[10] Clerk's Papers at 39.
[11] Br. of Appellant at 14.

6

et cetera, associated with property that is stolen, that is transported from burglaries, and observed other things in the car, such as a large number of telephones and CDs in the front of the car.[12]

Substantial evidence in the record supports the material essence of the challenged finding. As Wilson admits, Massingale testified that he suspected that the burglars were moving stolen property packed in various bags between hotels based on the evidence gathered at the hotel on March 20, and that he initially noticed the Monte Carlo, in part, because it was overflowing with property of a character and packed in a manner consistent with his investigation.

Relying on State v. Doughty, 170 Wn.2d 57, 239 P.3d 57 (2010), and State v. Martinez, 135 Wn. App. 174, 143 P.3d 855 (2006), Wilson also challenges the trial court's conclusions of law regarding the reasonableness of the initial detention. In Doughty, an officer stopped the defendant after watching him stop for two minutes around 3:20 a.m. at a house the police suspected was a drug house based on complaints from the neighbors of constant "short stay traffic." 170 Wn.2d at 60, 62. In concluding that these facts amounted to a mere hunch that was insufficient to justify a Terry stop, the court noted the lack of supporting information, such as an informant's tip regarding particular drugs, observations of the defendant's activities at the house, or observations of suspicious behavior or furtive movements. Doughty, 170 Wn.2d at 63-65.

In Martinez, an officer stopped a defendant who was walking alone briskly and looking around nervously late at night in a high crime neighborhood where car prowls had been reported. 135 Wn. App. at 177. But the officer was

---

[12] VRP (May 29, 2014) at 33-34.

patrolling the parking lot "because of past problems, not in response to a crime in progress report," and he "had no description or other information linking [the defendant] to any prowling that evening or, for that matter, at any time." Martinez, 135 Wn. App. at 181. The officer's general suspicion that the defendant "may have been up to no good" was not enough to warrant a Terry stop. Martinez, 135 Wn. App. at 182.

Wilson argues that his mere proximity to other people independently suspected of criminal activity and the innocuous circumstances surrounding his presence in the parking lot do not support an investigatory detention. He highlights the differences in his physical description from that of the occupant of Room 123, the innocuous nature of a car filled with small bags in the parking lot of an extended stay hotel, and the fact that Detective Massingale ultimately determined that the occupant of Room 123 was not connected with the burglaries.

But Massingale did not testify that he based his suspicions on the physical attributes of any particular suspect. Instead, he noted that three burglary suspects had not yet been arrested and three men stood around the Monte Carlo. And, while acknowledging that cars full of property in small bags may be common and innocuous at such hotels, Massingale also testified that the property in the Monte Carlo appeared to be consistent with his ongoing burglary investigation, as to the kinds of items he viewed, and the way the items were packed in the car. Finally, at the time of the detention, Massingale had not yet determined that the occupant of Room 123 was not connected to the burglaries.

The record and the trial court's findings support the conclusion that Detective Massingale's reasonable and articulable suspicions justified an investigatory detention. In particular, while Massingale was on his way to contact a person he suspected of pawning stolen property related to an ongoing investigation of a series of burglaries, in which three individuals and stolen property were still at large, he observed three people next to a car filled with property in the same hotel parking lot where he had recently apprehended another suspect and the vehicle used in one of the burglaries and packed in the same manner. These facts justified the initial detention.

Finally, relying on State v. Williams, 102 Wn.2d 733, 689 P.2d 1065 (1984), and for the first time on appeal, Wilson argues that the officers exceeded the permissible scope of the investigatory detention by running his name through the police department computer to determine his warrant status. In particular, he claims that Detective Massingale failed to sufficiently explain how "learning Mr. Wilson's warrant status would be relevant to his investigation of whether Mr. Wilson was involved in transporting stolen property."[13]

In Williams, an officer responding to a burglar alarm found the defendant in a car in front of the house with the alarm sounding. 102 Wn.2d at 734. The officer detained the driver, checked him for weapons, and placed him in handcuffs in the back of a patrol car. Williams, 102 Wn.2d at 734-35. The police then investigated the house burglary, returned to ask the defendant's business in the area, inventoried, sealed, and transported the defendant's car, and then took

---

[13] Br. of Appellant at 17.

the defendant to the police station, where they inquired for the first time about his name and address. Williams, 102 Wn.2d at 735, 740. Our Supreme Court determined that the "intensity and scope of the intrusion" upon the suspect's liberty was improper because (1) the police did not question him as to his presence in the area or connection to the crime or even his name and address until after an extensive investigation of the crime; (2) the police did not articulate a reason for the significant intrusion into the suspect's freedom during the detention; (3) the detention was not related to an investigation focused on the suspect; and (4) the time involved appeared "to approach excessiveness." Williams, 102 Wn.2d at 739-41.

Williams did not involve a computer check for warrants and does not support Wilson's claim. In Williams, the police exceeded the proper scope of an investigative detention by intruding significantly into the suspect's freedom and then focusing their investigation on the crime rather than the suspect. Nothing in Williams suggests that a police officer questioning a suspect detained in a Terry stop must offer an individualized justification for requesting a police department computer check of that person's warrant status. Wilson fails to demonstrate that Detective Massingale exceeded the proper scope of an investigatory detention.

Affirmed.

Trickey, J

WE CONCUR: