[No. 24258-7-III.   Division Three.   March 1, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. LANETTE CHRISTINE KELLER-DEEN, *Appellant*.

*Janet G. Gemberling* and *Julia A. Dooris* (of *Gemberling & Dooris, PS*), for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Alexander C. Ekstrom, Deputy*, for respondent.

¶1 BROWN, J. — Lanette Keller-Deen appeals her conviction for manufacturing methamphetamine, contending the trial court erred in denying her motion to suppress evidence. She argues the sheriff's detectives did not have reasonable and articulable suspicion to conduct an investigative *Terry*[1] stop based on her purchase of two items associated with methamphetamine manufacture and her

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

earlier purchases of four other items that could be used in the same process. We affirm.

## FACTS

¶2 In December 2004, a Home Depot loss prevention officer contacted Detective Doug Stanley to advise him that a "suspicious male," later identified as Ron Fowler, was purchasing Xylene, an organic solvent, and plastic tubing. Clerk's Papers (CP) at 97. The loss prevention officer told Detective Stanley he believed Mr. Fowler had previously purchased items used to manufacture methamphetamine.

¶3 Detective Stanley and Detective Larry Smith arrived and watched Mr. Fowler walk to a vehicle in the parking lot where he soon met Lanette Keller-Deen. Detective Stanley contacted the loss prevention officer and learned Ms. Keller-Deen had purchased a screen and acetone. Detective Stanley saw Mr. Fowler place his items in the car trunk. Mr. Fowler "scan[ned] the parking lot" as Ms. Keller-Deen placed her items in the trunk. CP at 98. The "[d]etectives were able to identify [Mr.] Fowler by appearance as an individual that they had seen on other surveillance cameras making prior purchases of pseudoephedrine, dry ice, and other solvents." CP at 97.

¶4 Detective Stanley determined the car in the parking lot was registered to Ms. Keller-Deen and Dale A. Deen. He learned Mr. Deen had two outstanding warrants. "Both names were familiar to Detective Stanley as being associated with purchases of pseudoephedrine tablets, [r]ed [d]evil lye, tolulene and dry ice, dating back to March of 2004." CP at 98. Ms. Keller-Deen "had been involved in approximately 15 prior suspicious purchases, the most recent being on October 7, 2004." CP at 98. Detective Stanley knew from training and experience how each of the items purchased could be used to manufacture methamphetamine.

¶5 When Ms. Keller-Deen and Mr. Fowler drove away, the detectives followed them to a parking lot where Ms.

Keller-Deen parked. The detectives approached the car and learned Mr. Fowler's identity. The detectives asked Ms. Keller-Deen to get out of the car, handcuffed her, and advised her of her *Miranda*[2] rights. She voluntarily answered the detectives' questions. The detectives did not arrest Ms. Keller-Deen or Mr. Fowler based on the immediate incidents, but did arrest Mr. Fowler on two outstanding arrest warrants. They impounded and searched the car, and found items consistent with the manufacture of methamphetamine.

¶6 The State charged Ms. Keller-Deen by amended information with manufacturing methamphetamine or, in the alternative, possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine. Ms. Keller-Deen unsuccessfully sought to suppress evidence obtained from the detectives' stop. A jury found her guilty of manufacturing methamphetamine. Ms. Keller-Dean appeals.

## ANALYSIS

¶7 The issue is whether the trial court erred in denying Ms. Keller-Deen's motion to suppress evidence and concluding the police had reasonable and articulable suspicion to conduct a *Terry* stop. Ms. Keller-Deen contends the police unlawfully seized her based upon a lawful purchase and impermissible profiling resulting from prior legal purchases of items that could be associated with the manufacture of methamphetamine.

¶8 We review a trial court's conclusions of law in an evidence suppression order de novo. *State v. Acrey*, 148 Wn.2d 738, 745, 64 P.3d 594 (2003). Those conclusions must be supported by findings of fact. *State v. Jacobs*, 121 Wn. App. 669, 676, 89 P.3d 232 (2004), *rev'd on other grounds*, 154 Wn.2d 596, 115 P.3d 281 (2005). Unchallenged findings are verities on appeal. *Acrey*, 148 Wn.2d at 745.

¶9 A police officer may briefly detain an individual under circumstances that satisfy the *Terry* reasonable sus-

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

picion standard. *State v. Glover*, 116 Wn.2d 509, 513-14, 806 P.2d 760 (1991); *State v. Carlson*, 130 Wn. App. 589, 593, 123 P.3d 891 (2005), *review denied*, 157 Wn.2d 1020 (2006). The officer must have a well-founded suspicion that the individual is engaged in criminal activity and must be able to " 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Glover*, 116 Wn.2d at 514 (quoting *Terry*, 392 U.S. at 21).

¶10 "The factual basis for an investigatory stop need not arise out of the officer's personal observation, but may be supplied by information acquired from another person." *Carlson*, 130 Wn. App. at 593. The reasonableness of an officer's suspicion is determined from "the totality of the circumstances known by the officer at the inception of the stop." *Id.* "[C]ircumstances which appear innocuous to the average person may appear incriminating to a police officer in light of past experience." *State v. Samsel*, 39 Wn. App. 564, 570, 694 P.2d 670 (1985).

¶11 In *Carlson*, two " 'rough dressed, unkempt and dirty' " men walked into a drugstore, split up, refused assistance, each made separate purchases of one methamphetamine precursor item, and returned to the same vehicle. *Carlson*, 130 Wn. App. at 591, 592 (quoting Clerk's Papers at 58). This court decided personal appearance and shopping activities showing separate single purchases of a methamphetamine precursor were inadequate to establish reasonable suspicion to support a *Terry* stop. *Id.* at 594-98.

¶12 Here, the facts show much more than those found in *Carlson*. Ms. Keller-Deen and Mr. Fowler each made separate purchases of two methamphetamine precursor items. The loss prevention officer believed Mr. Fowler had made previous precursor purchases. Detective Stanley saw Mr. Fowler and Ms. Keller-Deen meet at a vehicle in the store parking lot and he watched Mr. Fowler "scan the parking lot" as they placed their items in the trunk. CP at 98. The detectives recognized "[Mr.] Fowler by appearance

as an individual that they had seen on other surveillance cameras making prior purchases of pseudoephedrine, dry ice, and other solvents." CP at 97. Detective Stanley learned the car was registered to Ms. Keller-Deen and Mr. Deen. He recognized their names as being associated with several methamphetamine precursor purchases. Ms. Keller-Deen had made "15 prior suspicious [precursor] purchases" within the past several months, CP at 98, and Mr. Deen had two outstanding warrants. They did not learn the man in the car was not Mr. Deen until after they approached the car.

¶13 Thus the facts are distinguishable from those found in *Carlson*, where single isolated purchases of precursors were before the court. Therefore, the facts support the court's conclusion that reasonable suspicion existed to conduct a *Terry* stop. *Glover*, 116 Wn.2d at 513-14. We hold the court did not err in denying Ms. Keller-Deen's motion to suppress evidence.

¶14 Affirmed.

SWEENEY, C.J., and SCHULTHEIS, J., concur.