# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75320-7-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SEAN CHRISTOPHER KELLY, | ) | |
| Appellant. | ) | FILED: January 22, 2018 |
| | ) | |

APPELWICK, J. — The trial court convicted Kelly of possession of a controlled substance while on community custody. He contends that the court erred by denying his motion to suppress evidence discovered as a result of an investigatory detention. There was reasonable articulable suspicion to justify a Terry[1] stop and the detention did not exceed its permissible scope. We affirm.

## FACTS

At about 4:00 p.m. on January 11, 2016, Lynwood police officer Samuel Zacharia responded to a report of suspected drug use in the Alderwood Mall parking lot. The report was based on a telephone call from Candace,[2] an employee of the Alderwood Mall

---

[1] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L .Ed. 2d 889 (1968).
[2] Officer Zacharia, the only witness who testified at the suppression hearing, testified that he did not know Candace's last name, and it does not appear elsewhere in the record. The trial court nevertheless found that she was a "reliable citizen informant."

Security Department and who generally monitors security cameras.[3]  According to Candace's telephone call, there was a male "doing narcotics" in a maroon vehicle near the southwest door of the JC Penny department store.  Candace provided a license plate number, ALK 7615.  She reported that there were two people in the vehicle.  She described the passenger as a white or Hispanic male between the ages of 20 to 30, wearing a black beanie, blank plants, and a black jacket, and the driver as a 30 to 40 year old white female, wearing a pink top, black pants, and platform shoes.  She said that one or more occupants appeared to be "[s]moking something off tin foil."  Based on the officer's training, he was aware that heroin is typically smoked in this manner.

When he arrived on the scene, Officer Zacharia observed a vehicle that matched the description with a license plate number of AKR 7615, which was nearly identical to the number provided.  There was a female in the driver's seat and a male in the passenger's seat.  The officer parked near the maroon vehicle and approached the passenger's side on foot with a flashlight.  As he approached, the officer noticed the female "moving her hands frantically as if she was trying to conceal something down below."

The officer said that he would typically knock on the window to make contact, but in this case, he made contact with the male passenger through the open door.  The officer did not remember the details about the door opening, but said he generally would not open a vehicle door unless there was an exigency.

---

[3] Leon Dotter, a loss prevention employee of JC Penny, reported similar information but Officer Zacharia admitted that he was not apprised of Dotter's telephone call when he contacted the vehicle.

Officer Zacharia stood in the open doorway and asked both the driver and passenger for identification. They provided identification and while standing by the car, he ran their names through dispatch. After a "couple of minutes [or] probably seconds," he learned that the passenger, Sean Kelly, had a felony warrant for his arrest. The officer ordered Kelly to get out of the vehicle and arrested him.

Officer Zacharia then advised Kelly of his Fifth Amendment rights under Miranda.[4] Kelly admitted that there had been some heroin in the car, but said that the female smoked it all, and also admitted that he possessed a small amount of crack cocaine hidden in his pants.

The State charged Kelly with possession of a controlled substance while on community custody. Kelly moved to suppress his statements and the drug evidence discovered upon his arrest. He argued that the State seized him without legal authority. He initially argued that he was unlawfully seized because the police officer parked his patrol vehicle in a manner that blocked his vehicle. At the suppression hearing, Kelly raised a slightly different argument that he was seized when the police officer stood in the open doorway of the vehicle and prevented him from getting out of the vehicle. He argued that the seizure was unlawful because the officer had no articulable basis to initiate an investigatory detention based on the information provided by Candace.

The trial court denied the motion to suppress under CrR 3.6 and entered factual findings and conclusions of law. The court concluded, in relevant part,

1. Considering the totality of the circumstances, the defendant was not seized prior to Officer Zacharia ordering the defendant out of the vehicle after the warrant was confirmed.

---

[4] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

. . . .

3. Officer Zacharia did not seize the defendant by standing in the defendant's open car door while speaking to him.

. . . .

5. Based on the totality of the circumstances, Officer Zacharia had reasonable and articulable suspicion to detain the defendant for investigation of possession of drug paraphernalia and possession of a controlled substance had he chosen to do so.

After a bench trial on stipulated evidence, the court found Kelly guilty as charged. Kelly appeals.

## DISCUSSION

Kelly challenges the trial court's finding that when Officer Zacharia stood in the doorway of the vehicle with his hand on the top of the door, he "did not prevent the defendant from opening the passenger door further." He also challenges the court's finding that the officer did not make any "demands or commands" while interacting with Kelly before he learned about the active warrant. He argues that these findings are unsupported by the record, and that without these findings, there is no support for the court's conclusion that Officer Zacharia did not seize Kelly before he ordered him out of his vehicle and placed him in handcuffs.

The Fourth Amendment to the United States Constitution protects against unlawful searches and seizures. Article I, section 7 of the Washington Constitution protects against unwarranted government intrusions into private affairs. Although article I, section 7 provides greater protection than guaranteed by the Fourth Amendment, with respect to the validity of a Terry stop, article I, section 7 generally tracks the Fourth Amendment. State v. Z.U.E., 183 Wn.2d 610, 617, 352 P.3d 796 (2015); State v. Parker, 139 Wn.2d

486, 493-94, 987 P.2d 73 (1999). Warrantless searches are per se unreasonable. State v. Doughty, 170 Wn.2d 57, 61, 239 P.3d 573 (2010). The State has the burden to demonstrate that a warrantless search falls within an exception to the rule. Id.

A brief investigative detention, known as a Terry stop, is an exception to the warrant requirement. State v. Acrey, 148 Wn.2d 738, 746, 64 P.3d 594 (2003). A Terry stop is permissible where the State shows "that the officer had a 'reasonable suspicion' that the detained person was, or was about to be, involved in a crime." Z.U.E., 183 Wn.2d at 617 (quoting Acrey, 148 Wn.2d at 747). The officer's reasonable suspicion must be grounded in specific and articulable facts. Id. at 617-18. The facts must demonstrate more than a generalized suspicion or hunch that the person detained has committed a crime. Id. at 618.

In reviewing the merits of an investigatory stop, courts evaluate the totality of the circumstances available to the investigating officer. State v. Glover, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). When an officer bases his suspicion on an informant's tip, the State must demonstrate that the tip bears some indicia of reliability. Z.U.E., 183 Wn.2d at 618. Indicia of reliability is shown by "(1) circumstances establishing the informant's reliability or (2) some corroborative observation, usually by the officers, that shows either (a) the presence of criminal activity or (b) that the informer's information was obtained in a reliable fashion." Id.

In this case, the court concluded that that the officer had reasonable suspicion based on specific and articulable facts that justified briefly detaining Kelly for investigatory

purposes. Several unchallenged factual findings support this conclusion, including the following:

4. Officer Zacharia has responded to suspected criminal activity at the Alderwood Mall numerous times for crimes including theft, trespass, and possession of drug paraphernalia and controlled substances.

. . . .

6. Officer Zacharia is familiar with a mall security officer named Candace, and a JC Penny loss prevention officer name[d] Leon Dotter; both Candace and Dotter have, on several occasions, provide accurate information regarding suspected criminal activity near the Alderwood Mall.

7. Officer Zacharia is aware that security officer Candace will often use and/or operate surveillance cameras when reporting suspected criminal activity and that surveillance footage would likely be available from suspected criminal activity reported by Candace.

8. Officer Zacharia considers security officer Candace to be a reliable witness and does not recall her providing any inaccurate or unreliable information in the past.

. . . .

14. It was reasonable for Officer Zacharia to conclude that the reporting party Candace was the security officer at the mall who he had worked with before.

The trial court's unchallenged CrR 3.6 findings of fact are verities on appeal. State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). On appeal, Kelly points out that the officer observed only the driver make furtive movements as he approached the vehicle. He therefore suggests that the facts known to the officer were sufficient to justify detaining only the driver. But, the officer received information about "a male doing narcotics." The identifying details provided by Candace, including the location and description of the car and both occupants, were corroborated by the officer's personal observations. The fact that Officer Zacharia did not see Kelly make suspicious movements did not suggest that

the information provided by Candace was inaccurate nor did it dispel the officer's reasonable suspicion that Kelly was involved in committing a drug offense.

Kelly contends that, even if the facts justified a Terry stop, Officer Zacharia exceeded the lawful scope of the detention when he asked for identification after he approached the vehicle and did not see drugs or paraphernalia or notice signs of intoxication. But, a request for identification is permissible in the course of a Terry stop. "When police officers have a 'well-founded suspicion not amounting to probable cause' to arrest, they may nonetheless stop a suspected person, identify themselves, and ask that person for identification and an explanation of his or her activities." State v. White, 97 Wn.2d 92, 105, 640 P.2d 1061 (1982) (quoting State v. Gluck, 83 Wn.2d 424, 426, 518 P.2d 703 (1974)), called into question on other grounds by State v. Afana, 169 Wn.2d 169, 182 n.8, 233 P.3d 879 (2010); see also Glover, 116 Wn.2d at 513-14. In fact, in most cases, a police officer may engage a citizen in conversation and request identification without reasonable suspicion and such conduct, standing alone, does not elevate the encounter to an investigatory detention. O'Neill, 148 Wn.2d at 577-78; State v. Armenta, 134 Wn.2d 1, 11, 948 P.2d 1280 (1997); State v. Mote, 129 Wn. App. 276, 292, 120 P.2d 596 (2005). Officer Zacharia's request for Kelly's identification did not exceed the scope of the Terry stop.

Kelly also seeks remand for entry of written findings regarding the admissibility of his postarrest statements under CrR 3.5. However, those written findings have now been

7

entered.[5] Late entry of CrR 3.5 findings and conclusions does not require reversal unless it prejudices the defendant. State v. Byrd, 83 Wn. App. 509, 512, 922 P.2d 168 (1996). Here, the trial court made oral findings at the conclusion of the suppression hearing. Because the written findings and conclusions of law are consistent with the trial court's oral ruling and there is no suggestion of tailoring, Kelly cannot show prejudice. See State v. Taaas, 121 Wn. App. 872, 875, 90 P.3d 1088 (2004).

Finally, Kelly asks that we not impose appellate costs if we affirm his conviction. The State has informed the court that it will not seek appellate costs because of Kelly's continued indigency. We accept the State's representation. Thus, we need not otherwise address appellate costs.

Affirmed.

WE CONCUR:

---

[5] The trial court entered its written findings under CrR 3.6 approximately three weeks after the suppression hearing in May 2016, but did not enter written findings under CrR 3.5 until after Kelly filed the instant appeal.

8