**FILED**
**AUGUST 15, 2019**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36044-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSUE MANUEL OSORIO LOPEZ, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Josue Lopez challenges the stopping of his white pickup, which stop led to the seizure of controlled substances inside the vehicle. He argues that reasonable articulable suspicion did not justify the stop. We disagree and affirm his conviction of possession with intent to deliver a controlled substance.

FACTS

This appeal's facts cover two controlled buys of controlled substances implicating appellant Josue Lopez. The first sale occurred on April 13, 2016. The second sale,

which led to Lopez's arrest and conviction, transpired on January 26, 2017. We garner the facts from testimony during a motion to suppress hearing.

On April 13, 2016, Sunnyside Police Department Detective John Gusby worked for the Law Enforcement Against Drugs task force in Yakima County. Detective Gusby had learned from an informant that Josue Lopez may engage in the sale of cocaine. With that information, the task force assembled a surveillance team to shadow Lopez's activity. Task force members observed Lopez driving a large, lifted, four-door pickup truck. The truck's tailgate bore an emblem with the tradename "BOWTECH" accompanied by a picture of a deer's neck, head, and antlers. No other truck in Sunnyside displayed this distinct emblem.

The drug task force arranged for its informant to purchase cocaine from Josue Lopez on April 13, 2016. Before the controlled buy, task force members searched the informant and his vehicle for drugs or excess cash. The task force handed the informant cash for the controlled buy.

On April 13, detectives followed Josue Lopez to a business parking lot within the city of Sunnyside, where the informant arranged to meet Lopez. Lopez entered the parking lot in his truck and drove to the informant's car. After Lopez parked next to the driver's side door of the informant's car, the informant exited his vehicle and sat in Lopez's truck. Lopez drove around the parking lot, parked briefly in a parking stall away from the informant's vehicle, and then drove back to the informant's driver side door.

The informant exited Lopez's truck and returned to his own vehicle. Lopez drove to another location in the parking lot and parked his truck. Lopez walked to the informant's vehicle. Detective John Gusby observed a handshake between Lopez and the informant. The informant returned to his vehicle and drove away. The informant returned to task force members with a plastic parcel containing a white powdery substance that field tested for cocaine. Law enforcement did not then arrest Lopez.

We forward to January 2017, when Detective Michael Boone surveilled Josue Lopez. Detective Boone serves as a special agent with the Washington State Gambling Commission assigned to the drug task force in Yakima County. Boone underwent surveillance training that included forty hours of rolling surveillance tactics, eighty hours of drug enforcement administration, eighty hours of basic drug trafficking investigation school, and undercover certification school. Rolling surveillance entails trailing someone moving in a vehicle.

On January 26, 2017, Detective Michael Boone parked in the Sunnyside Bi-Mart parking lot, while conducting surveillance for an unrelated investigation. Detective Boone observed a white, lifted Ford F-250, with a "BOWTECH" emblem on the tailgate. Boone knew that the truck belonged to a suspect in another task force drug investigation headed by Detective John Gusby. Josue Lopez's truck passed in front of Boone's vehicle and parked in a parking stall next to a blue Chevrolet pickup truck. Only one person then occupied Lopez's truck. The blue Chevrolet remained in the middle of the traveling part

3

of a parking lot aisle. Detective Boone drove to a parking stall behind the two trucks to gain a better view. Boone spied two individuals now inside Lopez's truck, while no one occupied the blue Chevrolet. Lopez's truck moved, and Boone notified his surveillance team of the direction of travel of Lopez's truck as Boone tailed the truck. Lopez's truck approached the exit of the Bi-Mart parking lot, but did not leave the lot. Instead, the truck moved in a half-circle and stopped parallel to the blue Chevrolet. In order to avoid raising suspicion, Detective Boone exited the parking lot, but continued observing the two other vehicles. Boone did not observe the passenger exit Lopez's vehicle and return to the blue Chevrolet.

Based on Detective Michael Boone's training and experience, he concluded that the movement of Josue Lopez's truck and the rendezvous between the two men signaled the trafficking of illegal drugs. Boone relayed his observations to Detective John Gusby. Gusby told Boone that the behavior in the parking lot mirrored behavior during the April 2016 controlled buy. Both detectives agreed that the action did not follow normal shopping behavior. Boone and Gusby believed that Boone observed a possible drug transaction.

At the request of Detective Michael Boone, Yakima County Sheriff Deputy Justin Paganelli stopped Josue Lopez's truck for an investigative detention. Lopez informed Deputy Paganelli that a firearm lay in the door of his truck. A Sunnyside Police Department officer placed Lopez in handcuffs for officer safety. Deputy Paganelli

4

supervises a drug detection dog trained to detect heroin, cocaine, and methamphetamine or a combination of the three. Paganelli walked his dog around the truck, and the dog alerted to the partially opened driver's door. The Sunnyside officer transported Lopez to jail. Investigating officers obtained a search warrant to search Lopez's vehicle and seized a functional digital scale, a pill bottle with a white powdered substance, later determined to be 2.9 grams of cocaine hydrochloride, and a loaded Ruger SR 40, .40 caliber pistol.

PROCEDURE

The State of Washington charged Josue Lopez with possession of cocaine, a controlled substance, with intent to deliver. Lopez brought a motion to suppress the seized scale, cocaine, and pistol. He argued that the drug task force conducted an unlawful *Terry* stop.

After conducting a suppression evidentiary hearing, the trial court entered findings of fact and conclusions of law. Finding of fact number four reads:

> What Detective Boone observed on January 26, 2017 was consistent with the controlled buy involving the defendant that occurred on April 13, 2016 which was the subject of LEAD Task Force investigation under case number 16X00040. Furthermore, based on Detective Boone's training and experience, Detective Boone's observations on January 26, 2017 were consistent with the trafficking of illegal drugs and counter surveillance employed by those involved in the trafficking of illegal drugs.

Clerk's Papers (CP) at 56. The trial court upheld the validity of the investigatory stop of Lopez's vehicle because law enforcement, based on the totality of the circumstances, held reasonable articulable suspicion of criminal activity. Accordingly, the court denied

5

Lopez's motion to suppress evidence. The trial court convicted Josue Lopez of

possession with intent to deliver a controlled substance after a stipulated facts trial.

## LAW AND ANALYSIS

On appeal, Josue Lopez assigns error to the trial court's denial of his motion to

suppress evidence of the scale, cocaine, and pistol. When reviewing the denial of a

suppression motion, this court must determine whether substantial evidence supports the

trial court's findings of fact. *State v. Levy*, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006).

Evidence is substantial when it suffices to persuade a fair-minded, rational person of the

truth of the finding. *State v. Wayman-Burks*, 114 Wn. App. 109, 111, 56 P.3d 598

(2002). Unchallenged findings of fact are verities on appeal. *State v. O'Neill*, 148 Wn.2d

564, 571, 62 P.3d 489 (2003). This court reviews de novo conclusions of law pertaining

to suppression of evidence. *State v. Levy*, 156 Wn.2d at 733.

We first analyze whether substantial evidence supports the trial court's findings of

fact. We later address whether the findings support the conclusions of law.

Josue Lopez only challenges finding of fact 4 to the extent the finding presumes

criminal activity. To repeat, finding of fact number four reads:

> What Detective Boone observed on January 26, 2017 was consistent
> with the controlled buy involving the defendant that occurred on April 13,
> 2016 which was the subject of LEAD Task Force investigation under case
> number 16X00040. Furthermore, based on Detective Boone's training and
> experience, Detective Boone's observations on January 26, 2017 were
> consistent with the trafficking of illegal drugs and counter surveillance
> employed by those involved in the trafficking of illegal drugs.

CP at 56. Lopez argues that Detective Michael Boone's observations failed to establish the requisite suspicion for seizure. The State contends substantial evidence supports the finding. We agree with the State.

The trial court heard testimony regarding surveillance of Josue Lopez in April 2016 and January 2017. Detective John Gusby testified to his observations during the 2016 controlled buy with the informant. Gusby saw Lopez drive a distinct white Ford pickup with a "BOWTECH" emblem on the tailgate. Lopez retrieved the informant in a parking lot, drove in the lot for a short time, returned to the informant's car, shook hands, and left the informant. The informant presented Gusby with cocaine.

Detective Michael Boone testified to his observations during the January 2017 incident. Boone observed a similar elapse of events involving Lopez's lifted, white Ford F-250 with the "BOWTECH" insignia on the tailgate. Lopez parked next to an occupied vehicle in a parking lot, the occupant entered Lopez's truck, the two drove inside the lot momentarily, the two returned to the other vehicle, and the driver of the white pickup parked parallel to the passenger's vehicle. The trial court justifiably concluded the two occasions paralleled each other.

Detective Michael Boone testified about his surveillance training and how that training informed his observations on January 26, 2017. Boone scrutinizes behavior to determine if a suspect engages in activity intended to confuse law enforcement or hide illegal conduct, activity known as counter surveillance techniques. Counter surveillance

7

tactics include switching parking positions, stopping at unconventional spots in a parking lot, or stopping along the side of the road.

Detective Michael Boone testified that Josue Lopez's behavior on January 26, 2017 echoed the actions of one engaged in a drug transaction and counter surveillance. The trial court justifiably concluded in finding of fact 4 that, based on the detective's training and experience, the 2017 observations were consistent with the trafficking of illegal drugs and counter surveillance employed by one involved with drug trafficking.

We must now review whether the trial court's findings of fact support a conclusion that law enforcement held reasonable articulable suspicion to stop Josue Lopez's car on January 26, 2017. Josue Lopez contends that the State failed to meet its burden of establishing a valid investigative detention on January 26. The State argues that the detention of Lopez's truck was a valid investigative detention under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Generally, warrantless searches and seizures are per se unconstitutional under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). But, a few carefully drawn exceptions exist, which include exigent circumstances, inventory searches, searches incident to arrest, plain view searches, and *Terry* stops. *State v. Garvin*, 166 Wn.2d at 249; *State v. Fuentes*, 183 Wn.2d 149, 158, 352 P.3d 152 (2015). The State bears the burden of proving the exception to the warrant requirement

by clear and convincing evidence. *State v. Smith*, 115 Wn.2d 775, 789, 801 P.2d 975 (1990).

As noted, a brief investigatory seizure, commonly referred to as a *Terry* stop, is one exception to the warrant requirement. *Terry v. Ohio*, 392 U.S. 1 (1968). Under this exception, a police officer may, without a warrant, briefly detain an individual for questioning if the officer has reasonable and articulable suspicion that the person is or is about to be engaged in criminal activity. *State v. Fuentes*, 183 Wn.2d at 158 (2015). This court looks at the totality of the circumstances known to the officer at the time of the stop when evaluating the reasonableness of the officer's suspicion. *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). The totality of the circumstances includes the location of the stop, the officer's training and experience, the conduct of the person detained, the purpose of the stop, and the amount of physical intrusion into the person's liberty. *State v. Weyand*, 188 Wn.2d 804, 811-12, 399 P.3d 530 (2017). The suspicion must be individualized to the person being stopped. *State v. Weyand*, 188 Wn.2d at 812. In the absence of reasonable suspicion, the evidence uncovered from the stop must be suppressed. *State v. Fuentes*, 183 Wn.2d at 158.

Josue Lopez contends and underscores that: (1) Detective Michael Boone's observations of Lopez's truck were not of inherently suspicious behavior, (2) law enforcement never saw drugs or cash passing hands, and (3) law enforcement never identified the driver of the truck. We rule that officers could reasonably conclude that the

behavior in the two parking lots suggested criminal activity. We further hold that law enforcement need not see drugs or cash and need not have identified the driver to gain reasonable, articulable suspicion for a *Terry* stop.

When the activity is consistent with criminal activity, but also consistent with noncriminal activity, the behavior may still justify a brief detention. *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986). While an inchoate hunch is insufficient to justify a stop, circumstances which appear innocuous to the average person may appear incriminating to a police officer in light of past experience. *State v. Pressley*, 64 Wn. App. 591, 596, 825 P.2d 749 (1992). The officer need not ignore that experience. *State v. Pressley*, 64 Wn. App. at 596. While Lopez's driving behavior was susceptible to innocent explanations, Detective Michael Boone, through his training and experience, articulated that these maneuvers evoked criminal activity.

In response to Josue Lopez's emphasis that drug task force officers never observed a drug transaction, the State relies on cases concerning suspected drug transactions that involved no firsthand observation of any exchange. *State v. Kennedy*, 107 Wn.2d 1 (1986); *State v. Glover*, 116 Wn.2d at 514 (1991). The *Glover* court noted that courts consider an officer's training and experience when determining the reasonableness of a *Terry* stop. *State v. Glover*, 116 Wn.2d at 514. Citing *Terry v. Ohio*, 392 U.S. 1 (1968), the State also argues that an officer may base an investigative stop solely on unusual activity recognized by an experienced police officer.

We disagree with the State's contention that abnormal behavior observed by a trained law enforcement officer can by itself justify an investigative stop. Although not cited by either party, our Supreme Court's recent decision in *State v. Weyand*, 188 Wn.2d 804 (2017) must be considered in response to the State's argument. Corporal Bryce Henry conducted a *Terry* stop of a car after observing, at 2:40 a.m., Wesley Weyand and another man leave 95 Cullum Avenue, a house documented as the site of numerous drug deals. As the men quickly walked toward the car, they looked up and down the street multiple times. Based on these observations, coupled with the officer's knowledge of the extensive drug history at the residence, he stopped the vehicle. After the stop, Corporal Henry ran Weyand's name and discovered he had an outstanding warrant. A search incident to arrest of Wesley Weyand led to the discovery of a capped syringe on his person.

The Washington Supreme Court reversed Wesley Weyand's conviction. The Supreme Court noted that, although Corporal Henry identified 95 Cullum as a "known" drug house, he failed to articulate a reasonable suspicion that Weyand was involved in criminal activity at that residence based on Weyand's conduct at the inception of the stop. The court emphasized that reasonable suspicion must be individualized to the person being stopped and police cannot justify a suspicion of criminal activity based on a person's locale in a high crime area. Also, Weyand's looking up and down the street, considered to be furtive movements, failed to supply reasonable suspicion.

11

We compare the stop of Wesley Weyand to the investigatory stop of Josue Lopez. Rather than a "known" drug house with an extensive history, Lopez operated a "known" vehicle with a history of a single drug sale. In *Weyand*, the defendant walked quickly and looked up and down the street multiple times. This behavior, coupled with the history of the house, did not justify a suspicion of criminal activity, even at 2:40 in the morning. Josue Lopez parked his truck at a grocery store, let a passenger inside, drove in a half-circle, and returned to his passenger's car. This behavior, coupled with the history of Lopez's vehicle, led Detective Michael Boone to believe a drug transaction had taken place. A vehicle being driven abnormally in a parking lot and a person looking up and down a street can both be seen as innocent conduct. With that in mind, *Weyand* compels that this court conclude that, based solely on the driving in the parking lot, Detectives Boone and Gusby did not possess reasonable suspicion individualized to Lopez at the moment his vehicle was stopped.

The facts in Josue Lopez's appeal contain additional suspicious behavior. In *State v. Weyand*, Corporal Bryce Henry only articulated an unknown individual acting suspiciously after leaving a "known" drug house late at night before his *Terry* stop. Lopez previously sold cocaine to an informant, drove the same unique pickup truck, and employed the same vehicle maneuvers during the transaction.

Case law does not require that a suspect be identified prior to a valid *Terry* stop. In *State v. Glover*, 116 Wn.2d 509 (1991), officers observed Conjewel Glover acting

12

suspiciously when turning from the officers and walking faster after leaving an apartment building. Officers did not recognize Glover as a resident of the apartment complex, which has a no trespassing policy and history of gang and drug activity. Officers stopped the unknown man to investigate a possible criminal trespass and subsequently found cocaine on his person after they noticed a clear plastic baggie. The court held that the arresting officers had substantial evidence to justify a *Terry* stop, and they had reasonable grounds to believe that defendant was committing the crimes of criminal trespass and drug possession.

Josue Lopez also questions whether a police officer can rely on information from a previous controlled buy, occurring nine months before, as a basis to form reasonable suspicion. He emphasizes that, in January 2017, officers did not determine if ownership of the pickup truck had changed since April 2016. Officers also did not confirm that the driver of the pickup truck in January was the same as the driver in April. Nevertheless, Lopez cites no authority for the proposition that these specific facts prevent a finding of reasonable articulable suspicion. Some cases require information used by officers to support probable cause or articulable suspicion to be recent information, but here the law enforcement officers had both old information and new information.

We note that, in April 2016, a confidential informant informed law enforcement that Josue Lopez engaged in the sale of controlled substances. We know nothing about the informant's previous record of supplying reliable information to law enforcement.

13

Nevertheless, the informant confirmed by a controlled buy that Lopez sold cocaine. That information alone, plus the use of the distinct pickup truck, could have formed probable cause to arrest the driver of the truck in January 2017. In his analysis, Lopez fails to recognize his sale of cocaine in April 2016.

## CONCLUSION

We affirm the trial court's denial of Josue Lopez's motion to suppress evidence. We confirm Lopez's conviction for possession of a controlled substance with intent to deliver.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Fearing, J._

Fearing, J.

WE CONCUR:

_Korsmo, J._

Korsmo, J.

_Lawrence-Berrey, C.J._

Lawrence-Berrey, C.J.

14